UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION; THE FRANCISCAN SISTERS OF DILLINGEN, ST. ANNE'S GUEST HOME, and ST. GERARD'S COMMUNITY OF CARE,<br><br>*Plaintiffs,*<br><br>v.<br><br>XAVIER BECERRA, Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHARLOTTE BURROWS, Chair of the United States Equal Employment Opportunity Commission; and UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>*Defendants.* | No. 3:23-cv-PDW-ARS |

**CBA PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs the Catholic Benefits Association ("CBA"), on behalf of its members, and Plaintiffs Sisters of St. Francis of the Immaculate Heart of Mary, St. Anne's Guest Home, and St. Gerard's Community of Care (collectively, "CBA Plaintiffs"), move for a temporary restraining order and preliminary injunction on their claim for violation of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4 ("RFRA"), and request a temporary restraining order and preliminary injunctive and declaratory relief against Defendants Department of Health and Human Services (the "Department" or "HHS") and United States Equal Employment Opportunity Commission's ("EEOC") and their respective secretaries (collectively, "Government Defendants").

1

1. On January 19, 2021, this Court enjoined the Government Defendants' regulatory mandate that requires CBA members to perform and cover in their health plans gender transition-services (the "Mandate"), holding that the Mandate substantially burdened CBA members' religious beliefs in violation of RFRA. *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1152-54 (D.N.D. 2021). The Court entered a final judgment and permanent injunction on February 19, 2021 that protected CBA's members, their insurers, and respective third-party administrators. *Religious Sisters of Mercy v. Cochran*, 2021 WL 1574628 (D.N.D. Feb. 19, 2021).

2. The Eighth Circuit affirmed this Court's injunction except as to CBA's associational standing. *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022). The Eighth Circuit ruled that the CBA had failed to comply with *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) by not submitting sworn evidence of an individual CBA member who would have standing to sue in its own right to challenge the Mandate. 55 F.4th at 601-02. On remand, the Court dismissed without prejudice the CBA's claims premised on associational standing, noting CBA's right to fix that issue in a new suit: "Importantly, the dismissal is without prejudice, and nothing prevents the CBA from filing a new action, where associational standing is properly established." *See* ECF 169 at p. 3, *Religious Sisters of Mercy v. Becerra*, 16-cv-386 (D.N.D. Sept. 15, 2023) (Welte, C.J.). The Court entered a final judgment on October 11, 2023. ECF 170, *Religious Sisters of Mercy et al. v. Becerra et al.*, 16-cv-386 (D.N.D. October 11, 2023). The CBA filed its complaint in this action on October 13, *see* ECF no. 1, which is materially identical in all respects to the *Religious Sisters of Mercy* case except that the CBA has properly established associational standing under the Eighth Circuit's rule.

3. Paragraphs 14-45 and 66, and Exhibits E-H of the CBA's verified complaint in the instant action establish its associational standing to challenge Defendants' Mandate. Exhibits E-H to the CBA's verified complaint are declarations of CBA members that each employ more than fifteen employees (Title VII standing) and receive HHS funding (Section 1557 standing). And the CBA's complaint is verified by Plaintiff-members Sisters of Dillingen, St. Anne's Guest Home, and St. Gerard's Community of Care, each of whom have standing to sue in their own right. *See* Compl. at ¶¶ 14-46. Each of these entities is a member of the CBA, Compl. at ¶¶ 24, 35, 45; Exh. E at ¶ 19; Exh. F at ¶ 16; Exh. G at ¶ 15; Exh. H at ¶ 15. Consistent with their Catholic beliefs regarding the dignity of all persons and the Church's teachings regarding the gift of biological sex, these members cannot perform or cover gender-transition services. *E.g.*, Compl. at ¶¶ 14, 17; Exh. E at ¶¶ 17-18; Exh. F at ¶¶ 14-15; Exh. G at ¶¶ 10, 12. Through this testimony of specific members, the CBA has "properly established" its associational standing under the law of the Eighth Circuit. The CBA has "submit[ted]" sworn evidence showing that "one or more of its members would be directly affected" by the Mandate. *Religious Sisters of Mercy*, 55 F.4th at 602.

4. CBA Plaintiffs accordingly ask the Court to find that the Mandate promulgated by Defendants, which requires healthcare providers and employers to perform and provide coverage for health services related to gender transition, violates CBA members' rights under RFRA and, as a result, Plaintiffs and their members are entitled to an exemption from the Mandate to enable them to continue providing health services and coverage consistent with their religious beliefs.

5. Before a temporary restraining order may enter, Federal Rule of Civil Procedure 65(b)(1)(B) requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why should not be required." The parties conferred extensively by email, Zoom

videoconference, and telephone in an effort to reach a stipulated stay of enforcement, including on November 20, 2023. This conferral is why the CBA has waited several weeks to file the instant motion; they hoped to reach terms with the Government Defendants without judicial intervention. The parties were not able to come to terms on a stay of enforcement consistent with this Court's injunction entered in February 2021. A copy of all filings by the CBA today will be simultaneously served on counsel for Government Defendants.

6. CBA Plaintiffs accordingly request that the Court enter a temporary restraining order and preliminary injunction identical in substance to the Court's February 19, 2021 injunction on a preliminary basis:

   a. **PRELIMINARILY ENJOINING AND RESTRAINING** HHS, Secretary Becerra, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against the CBA Plaintiffs in a manner that would require them to perform or provide insurance coverage for gender-transition procedures, including by denying federal financial assistance because of their failure to perform or provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

   b. **PRELIMINARILY ENJOINING AND RESTRAINING** the EEOC, Chair Burrows, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in

    office, from interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or any implementing regulations thereto against the CBA and its members in a manner that would require them to provide insurance coverage for gender-transition procedures, including by denying federal financial assistance because of their failure to provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

c. **PRELIMINARILY DECLARING** that the Court's preliminary injunction shall be restricted to the CBA Plaintiffs, their present and future members, anyone acting in concert or participation with them, and their respective health plans and any insurers or third-party administrators ("TPA") in connection with such health plans.

d. **PRELIMINARILY DECLARING** that to come within the scope of the Court's preliminary injunction, a CBA member must meet the following criteria:

    i. The employer is not yet protected from interpretations of Section 1557 and Title VII that require the provision or coverage of gender transitions by any other judicial order;

    ii. The CBA has determined that the employer meets the CBA's strict membership criteria;

    iii. The CBA's membership criteria have not changed since the CBA filed its initial complaint on October 13, 2023; and

        iv. The employer is not subject to an adverse ruling on the merits in another case involving interpretations of Section 1557 and Title VII that require the provision or coverage of gender transitions.

7. **PRELIMINARILY DECLARING** that neither HHS nor the EEOC violates the Court's preliminary injunction by taking any of the above-described actions against any CBA member, anyone acting in concert or participation with a CBA member, or a CBA member's health plans and any insurers or TPAs in connection with such health plans if the agency officials directly responsible for taking these actions are unaware of that entity's status as a CBA member or relevant relationship to a CBA member.

8. **PRELIMINARILY DECLARING** that, if either agency, unaware of an entity's status as a CBA member or relevant relationship to a CBA member, takes any of the above-described actions, the CBA member and the CBA may promptly notify a directly responsible agency official of the fact of the member's membership in the CBA (and the CBA member's satisfaction of the (i)-(iv) criteria, described above) or the entity's relevant relationship to a CBA member and its protection under this order. Once such an official receives such notice from the CBA member and verification of the same by the CBA, the agency shall promptly comply with this order with respect to such member or related entity.

9. **PRELIMINARILY DECLARING** that nothing in the Court's preliminary injunction shall prevent the EEOC from:

    a. taking any action in connection with the acceptance of a charge for filing regardless of the source, including receiving an online inquiry via the agency's Public Portal or requesting or receiving a questionnaire or other correspondence from the charging

    party, when the charge concerns an allegation against a CBA member concerning the exclusion of gender-transition procedures from its insurance coverage;

  b. accepting a charge alleging that a CBA member does not provide insurance coverage for gender-transition procedures, and from entering the charge into the EEOC's computer systems;

  c. serving a notice of the charge upon a CBA member within ten days as required by 42 U.S.C. § 2000e-5(b); or

  d. issuing a right-to-sue notice to a charging party who has filed a charge against a CBA member concerning the exclusion of gender-transition procedures from its insurance plan in accordance with the requirements and procedures set forth in 42 U.S.C. § 2000e-5(b) & (f)(1) and 29 C.F.R. § 1601.28(a)(1) & (2).

10. A proposed order is simultaneous herewith.

11. For the reasons set forth herein and in CBA Plaintiffs' supporting memorandum brief submitted herewith, CBA Plaintiffs respectfully request that the Court enter preliminary declaratory and injunctive relief as described above.

DATED: November 22, 2023.

Respectfully submitted,

*/s/ Andrew Nussbaum*

L. Martin Nussbaum
Andrew Nussbaum
Nussbaum Gleason PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
(719) 428-4937
martin@nussbaumgleason.com
andrew@nussbaumgleason.com
*Attorneys for Plaintiffs*