IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION, *et al.* | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | )  No. 3:23-cv-00203-PDW-ARS |
| XAVIER BECERRA, *et al.* | ) ) ) |
| *Defendants*. | ) ) ) |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING
SECTION 1557 RULEMAKING**

Defendants respectfully request that the Court stay proceedings in this matter pending the finalization of rulemaking proceedings that will likely have a significant impact on this case. Plaintiffs' claims against Defendant United States Department of Health and Human Services ("HHS") hinge on their assertion that HHS's past regulations implementing Section 1557 of the Affordable Care Act impose requirements relating to gender identity that Plaintiffs contend are unlawful. But HHS is in the process of finalizing a new rule implementing Section 1557, which will supersede the earlier rules that form the basis of Plaintiffs' claims and could render those claims moot. HHS has submitted a draft of the final rule to the Office of Management and Budget Office of Information and Regulatory Affairs ("OIRA"), and the rule is currently pending Executive Order 12866 Regulatory Review. The Notice of Proposed Rulemaking issued last year indicates that HHS is considering proposals that may have a significant impact on Plaintiffs' claims. Accordingly, it would conserve judicial resources and simplify the matters in this case if the Court stays consideration of all of Plaintiffs' claims pending the finalization of the Section

1557 rulemaking. Plaintiffs' claims against HHS and the United States Equal Employment Opportunity Commission ("EEOC") are also intertwined, and litigating them separately would likely lead to multiple rounds of staggered summary judgment briefing. Moreover, as Defendants explained in their opposition to Plaintiffs' motion for preliminary injunctive relief, in light of the Eighth Circuit's decision in *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022), Defendants have committed to apply the terms of this Court's permanent injunction in that case to all current members of the Catholic Benefits Association ("CBA"), and to their respective insurers and third-party administrators for coverage pertaining to current CBA members, pending this Court's resolution of Plaintiffs' Religious Freedom Restoration Act ("RFRA") claims on summary judgment. That commitment would extend through the pendency of a stay. Plaintiffs and CBA's members would therefore not be prejudiced by the requested relief.

**BACKGROUND**

Plaintiffs filed their Complaint on October 13, 2023, challenging the lawfulness of various legal interpretations of HHS and EEOC. On November 22, 2023, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 3, which is fully briefed. Defendants' response to the Complaint is currently due February 12, 2024. *See* ECF No. 24; Fed. R. Civ. P. 12(a)(2); Fed. R. Civ. P. 6(a)(3).[1]

Plaintiffs contend that supposed requirements to perform and provide coverage for gender transition services derives from the combined effect of: (1) a regulation HHS promulgated in 2016 implementing Section 1557 (the "2016 Rule"); (2) a regulation HHS promulgated in 2020

---

[1] Defendants are also requesting, by separate motion, that the Court extend the deadline for Defendants to respond to Plaintiffs' Complaint until thirty days after the Court rules on Plaintiffs' pending Motion for Temporary Restraining Order and Preliminary Injunction, or—if Defendants' motion to stay proceedings is granted—thirty days after the stay is lifted, whichever is later.

2

implementing Section 1557 (the "2020 Rule"), which superseded the 2016 Rule but which was partially and preliminarily enjoined by certain courts; and (3) EEOC's alleged interpretation of Title VII. *See, e.g.*, Compl. ¶¶ 1–3, 7. The Complaint requests that the Court declare unlawful and enjoin enforcement of the alleged "Mandate." *See id.* ¶ 3 & Prayer For Relief.

On August 4, 2022, HHS and its Office for Civil Rights ("OCR") promulgated a Notice of Proposed Rulemaking proposing a rule to implement Section 1557, which would supersede the 2020 Rule and any aspects of the 2016 Rule deemed to remain in effect. *See* HHS, Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824 (Aug. 4, 2022) ("2022 NPRM"). HHS is a defendant in several cases involving Section 1557 that are stayed pending the conclusion of the new rulemaking and, in many of those cases, HHS is subject to reporting requirements regarding the status of the rulemaking. In 2023, HHS informed district courts presiding over several of those stayed cases that, while it is difficult for the agency to predict with accuracy the time period for finalizing the rule, it aspired to submit the rule to OIRA for final clearance by the end of calendar year 2023 and to issue a final rule not later than this winter. *E.g.*, Update on Status of Proposed Rulemaking, *Whitman-Walker Clinic, Inc. v. HHS*, No. 1:20-cv-01630, ECF No. 93 (D.D.C. July 31, 2023). Consistent with that goal, HHS submitted a draft of the final rule to OIRA, and OIRA received the draft on December 21, 2023. The rule is currently pending Executive Order 12866 Regulatory Review. The status of the draft final rule is available at this website: https://www.reginfo.gov/public/do/eoDetails?rrid=354213.

**ARGUMENT**

"A district court has broad discretion to stay proceedings when appropriate to control its docket, conserve judicial resources, and ensure the matter is handled with economy of time and effort for itself, counsel, and litigants." *Johnson v. N. Dakota Guar. & Title Co.*, No. 1:17-cv-120,

2018 WL 6706672, at *2 (D.N.D. Dec. 20, 2018) (quoting *Ass'n of Equip. Mfrs. v. Burgum*, No. 1:17-cv-151, 2018 WL 1773145, at *1 (D.N.D. March 5, 2018)). "Factors for the court's consideration include but are not limited to the conservation of judicial resources, whether the stay would unduly prejudice or give a clear tactical advantage to one party, and whether a stay will simplify the issues in question and the trial of the case." *Id*. A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706–07 (1997).

Applying this standard, the Court should stay proceedings in this case pending the finalization of the Section 1557 rulemaking. A stay would "conserve judicial resources." *Johnson*, 2018 WL 6706672, at *2. Plaintiffs challenge purported legal requirements that Plaintiffs contend derive from HHS's prior regulations implementing Section 1557, but when HHS finalizes its new Section 1557 rule, that rule will supersede those prior regulations and could render moot the challenged HHS requirements. Defendants' response to Plaintiffs' complaint is not currently due until February 12, 2024. And even if Plaintiffs were to move immediately for summary judgment, the Court would be considering that motion at around the same time that HHS anticipates finalizing the rule. If HHS finalizes the rule while the Court is in the midst of considering the merits, then at a minimum it will be necessary to engage in fresh briefing concerning the impact of the new rule on Plaintiffs' claims.

Furthermore, although the content of the new rule will not be certain until it is finalized, there is reason to believe that the new rule may have a significant impact on this case. A central premise of Plaintiffs' claims against HHS is their allegation that HHS does not recognize any

4

exemptions to the requirements it purportedly imposes under RFRA or other religious conscience laws. Compl. ¶¶ 6, 146–49. Plaintiffs contend that, with the supposed lack of religious exemptions, the requirements purportedly imposed by HHS violate the rights of CBA's members under RFRA and the First Amendment. Yet, in the 2022 NPRM, HHS and OCR proposed instituting a procedure in which a covered entity could assert claims that it is entitled to an exemption from the rule due to the application of federal conscience or religious freedom laws, and OCR would hold any investigation or enforcement activity regarding the covered entity in abeyance until it made a determination on the entity's entitlement to a religious exemption. 87 Fed. Reg. at 47,918–19 (proposed 45 C.F.R. § 92.302). HHS and OCR explained this proposed provision as follows:

> OCR maintains an important civil rights interest in the proper application of Federal conscience and religious freedom protections. In enforcing Section 1557, OCR is thus committed to complying with RFRA and all other legal requirements. The Department believes that the proposed approach in this section will assist the Department in fulfilling that commitment by providing the opportunity for recipients to raise concerns with the Department, such that the Department can determine whether an exemption or modification of the application of certain provisions is appropriate under the corresponding Federal conscience or religious freedom law. As noted above, the Department also maintains a strong interest in taking a case-by-case approach to such determinations, which will allow it to account for any harm an exemption could have on third parties and, in the context of RFRA, to consider whether the application of any substantial burden on a person's exercise of religion is in furtherance of a compelling interest and is the least restrictive means of advancing that compelling interest.

*Id*. at 47,886. Accordingly, the finalization of the Section 1557 rule may have a significant impact on Plaintiffs' claims that Defendants have violated their religious freedom rights and those of other CBA members by imposing purported requirements without any exemptions available under RFRA or other religious conscience laws.

It would further conserve judicial resources to stay the entire case, including the claims against EEOC. Staying only the claims against HHS while allowing the claims against EEOC to

proceed would needlessly complicate matters and would likely lead to multiple rounds of staggered summary judgment briefing.[2]

A stay would not "unduly prejudice or give a clear tactical advantage to one party." *Johnson*, 2018 WL 6706672, at *2. Neither party would obtain a tactical advantage because the Court could continue to resolve Plaintiffs' claims following the expiration of any stay. Nor would a stay prejudice Plaintiffs because of Defendants' commitment to abide by the terms of the injunction in *Religious Sisters* for all current CBA members pending this Court's resolution of Plaintiffs' RFRA claims on summary judgment, which provides Plaintiffs with all the relief they would be entitled to from a preliminary injunction. *See* ECF No. 19, at 12–13, 19–20; *see also cf. Washington v. Trump*, 2017 WL 1050354, at *5 (W.D. Wash. Mar. 17, 2017) (finding that any prejudice to plaintiffs from stay would be "minimal" in light of the preliminary injunctive relief already in effect); *Hawaii v. Trump*, 233 F. Supp. 3d 850, 855 (D. Haw. 2017) (same); *Boardman v. Pac. Seafood Grp.*, 2015 WL 13744253, at *2 (D. Or. Aug. 6, 2015) (granting stay of proceedings while defendants pursued appeal of preliminary injunction, and finding stay would not harm plaintiffs because of the injunction in place).

Finally, a stay will "simplify the issues in question." *Johnson*, 2018 WL 6706672, at *2. Plaintiffs' claims against HHS rest on a challenge to purported requirements that Plaintiffs contend derive from several regulatory pronouncements, as altered by a series of injunctions and court decisions issued by several jurisdictions. *See* Compl. ¶¶ 1–3, 7. Plaintiffs themselves spend over a hundred paragraphs in their Complaint explaining the interplay between those regulatory actions,

---

[2] Furthermore, Plaintiffs' claims against HHS are intertwined with those against the EEOC. *See* Compl. ¶ 3 (defining the alleged "Mandate" to include "the requirements imposed by the 2016 Rule and EEOC['s] interpretation of Title VII"); *id.* ¶ 126 (alleging that "HHS and EEOC issued [the alleged] Mandate").

6

the underlying statutes, and court decisions they contend are relevant to what they allege is the "Mandate." *See id.* ¶¶ 109–222. Defendants dispute Plaintiffs' contentions about the regulatory requirements that are currently in effect. Therefore, adjudicating the merits of Plaintiffs' claims requires determining what regulatory requirements are in effect against a complicated background. Once the new Section 1557 rule is finalized, that will significantly simplify matters because the new rule will set forth the then-extant regulatory requirements.

Defendants recognize that another court in this District denied a similar request for a stay in *Christian Employers Alliance v. EEOC*, Case No. 1:21-cv-00195 (Nov. 17, 2023 D.N.D.), ECF No. 79. Defendants respectfully disagree with the reasoning of that decision. Litigating this case while the challenged HHS regulations will soon be superseded would waste Defendants' resources, as well as this Court's. Moreover, HHS is now further along in the regulatory process than it was when the court issued its denial of the requested stay in *Christian Employers Alliance*; the draft final rule is currently undergoing final regulatory review. Also, unlike that case, which was filed in October 2021, Plaintiffs filed this case in October 2023, and Defendants' response to Plaintiffs' Complaint is not yet due. Under these circumstances, a stay is warranted.

## CONCLUSION

For the foregoing reasons, the Court should stay proceedings pending finalization of HHS's Section 1557 regulatory proceedings.

Dated: February 2, 2024                Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General

                                       MICHELLE BENNETT
                                       Assistant Director, Federal Programs Branch

                                        */s/ Bradley P. Humphreys*
                                       BRADLEY P. HUMPHREYS

(D.C. Bar No. 988057)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0878
Fax: (202) 616-8470
E-mail: Bradley.Humphreys@usdoj.gov

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on February 2, 2024, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's CM/ECF system. Parties may access this filing through the CM/ECF system.

                                            */s Bradley P. Humphreys*
                                            BRADLEY P. HUMPHREYS