**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION; SISTERS OF ST. FRANCIS OF THE IMMACULATE HEART OF MARY; ST. ANNE'S GUEST HOME; and ST. GERARD'S COMMUNITY OF CARE,<br><br>        *Plaintiffs,*<br>v.<br><br>XAVIER BECERRA, Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHARLOTTE BURROWS, Chair of the United States Equal Employment Opportunity Commission; and UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        *Defendants.* | No. 3:23-cv-203-PDW-ARS |

**CBA PLAINTIFFS' RESPONSE IN OPPOSITION TO GOVERNMENT
DEFENDANTS' MOTION TO STAY**

Between the *Religious Sisters of Mercy* litigation (case no. 16-cv-436-PDW-ARS) and this follow-on lawsuit, this dispute is in its eighth year. In that time, the Government Defendants have never disavowed their interpretations of Section 1557 and Title VII that force Catholic employers to an existential choice: perform and provide "gender-transition services" or face ruinous fines and enforcement actions that would sink thousands of Catholic ministries. In that time, the Government Defendants have forced CBA and its members to expend, in real terms, more than $1 million in legal fees to seek relief from a Mandate that the Eighth Circuit has held blatantly violates the

1

Religious Freedom Restoration Act. In that time, the Government Defendants have sought and received *fourteen* previous stays of the case, in an effort to run out the clock and force CBA to incur additional expense. And in that time, the Government Defendants, who now pretend to care about judicial efficiency, forced CBA Plaintiffs to file this follow-on lawsuit to decide whether CBA has evidence that satisfies the first prong of the associational standing test only to *immediately* concede that CBA's evidence meets that threshold. *See* ECF No. 22 at 1-3.

Government Defendants now seek a fifteenth stay. The Court should deny that request in light of the manifest prejudice and waste of judicial resources further delay would cause. The Eighth Circuit's decision affirming this Court's injunction in *Religious Sisters of Mercy* conclusively determined that the CBA faces a credible threat of enforcement of the Government's Mandate and that CBA members have a right under RFRA to an exemption. The single, narrow issue left undecided by the Eighth Circuit is whether the CBA has evidence of an individual member who has suffered the requisite harm for associational standing. The CBA has presented the Court with not one, but *twelve*, such members, a point which the Government no longer disputes. ECF No. 3 at p. 3, ¶ 3. Nor does the Government contend that their new proposed rule will (1) reverse or narrow their interpretations of Section 1557 and Title VII that require Catholic employers to cover and perform gender-transition services; or (2) provide a religious exemption in accordance with the rulings of the Eighth Circuit, this Court's Eastern and Western Divisions, the Fifth Circuit, and the Northern District of Texas.[1] It does not. If anything, this record of delay and the narrow issues left to be resolved counsel in favor of an expedited resolution of the dispute on the merits.

---

[1] *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1153 (D.N.D. 2021); *Christian Emps. All. v. United States Equal*

## BACKGROUND

The complete background to this dispute is set forth in detail in the CBA's briefing on its motion for preliminary injunction. ECF 3; ECF 22. Rather than repeat that background here, the CBA offers a timeline of this dispute:

- **December 28, 2016**: CBA files its complaint against the Mandate in *Catholic Benefits Association v. Burwell*, 16-cv-432 (D.N.D.), which is subsequently consolidated with the *Religious Sisters of Mercy* litigation.

- **Between May 26, 2017 and October 5, 2020**: the Government requests fourteen stays of the litigation so it can "reconsider" the Mandate.[2]

- **January 19, 2021:** The Court enjoins the Mandate as it applies to all of CBA's present and future members, and against any future "implementing regulations." *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113 (D.N.D. 2021).

---

*Opportunity Comm'n*, 2022 WL 1573689, at *1 (D.N.D. May 16, 2022); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 372 (5th Cir. 2022); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019).

[2] See *Religious Sisters of Mercy et al. v. Becerra et. al.*, 3:16-cv-386 (D.N.D)., ECF No. 45 (May 26, 2017) (request to stay), ECF No. (May 26, 2017) (request to extend stay), ECF No. 61 (May 21, 2018) (request to extend stay), ECF No. 62 (July 20, 2018) (request to extend stay), ECF No. 64 (Oct. 18, 2018) (request to extend stay), ECF No. 67 (Jan. 15, 2019) (request to stay), ECF No. 70 (Feb. 19, 2019) (request to extend stay), ECF No. 71 (May 31, 2019) (request to extend stay), ECF No. 76 (Oct. 4, 2019) (request to extend stay), ECF No. 78 (Jan. 2, 2020) (request to extend stay), ECF No. 81 (Apr. 3, 2020) (request to extend stay), ECF No. 83 (Jul. 6, 2020) (request to extend stay), ECF No. 86 (Aug. 5, 2020) (request to extend stay), ECF No. 88 (Oct. 5, 2020) (request to extend stay).

- **December 9, 2021:** The Eighth Circuit affirms this Court's injunction except as to a narrow evidentiary question regarding prong one of the associational standing test. *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022).

- **March 28, 2023**: The Eighth Circuit's mandate issues. ECF No. 143, *Religious Sisters of Mercy v. Becerra*, 16-cv-386 (D.N.D. Mar. 28, 2023).

- **May 5, 2023**: Over the Government's opposition, CBA asks to reopen the record to provide the Court with declarations of its members who have standing to sue in their own right. ECF No. 147, *Religious Sisters of Mercy v. Becerra*, 16-cv-386 (D.N.D. May 5, 2023).

- **October 11, 2023**: The Court enters an amended judgment removing protection for CBA's members. ECF No. 170, *Religious Sisters of Mercy v. Becerra*, 16-cv-386 (D.N.D. Oct. 11, 2023).

- **October 13, 2023**: CBA files this suit, with a substantively identical complaint to the one it filed in *Religious Sisters of Mercy*. ECF No. 1.

- **November 22, 2023**: After failing to agree to stay of enforcement identical to this Court's January 19, 2021 injunction, CBA files a motion for preliminary injunction asking the Court to reissue its January 19, 2021 injunction.

- **February 5, 2024**: Seven years and two months after CBA initially filed suit, the Government requests a fifteenth stay of this dispute. ECF No. 26.

## ARGUMENT

A motion to stay may be granted if: the movant shows it will suffer substantial hardship absent a stay; the stay will not cause any party prejudice; the stay will promote judicial efficiency; and no party will gain a tactical advantage by the stay. *Johnson v. N. Dakota Guar. & Title Co.*, 2018 WL 6706672, at *2 (D.N.D. Dec. 20, 2018). Each of these elements weighs against a stay here.

4

1. **The Government has identified no "hardship or inequity in being required to go forward."**

To be entitled to a stay, the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248 (1936); *see also Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (same) (Beam J., concurring). The movant bears a "heav[]y" burden in identifying an inequity sufficient to justify "depart[ing] from beaten track" that, once commenced, a lawsuit should not be stayed. *Id.* And where, as here, an indefinite stay is requested, the movant must meet demonstrate a "pressing need." *Landis*, 299 U.S. at 255.

The Government Defendants make no showing or argument they would suffer hardship or inequity or a pressing need for an indefinite stay of the case. Nor can they. The only party that will suffer hardship is the CBA and its members who must continue to litigate this dispute *ad nauseum* even though the central questions have been settled by the Eighth Circuit. "[T]he protracted and indefinite nature of the [Government]'s [requested] stay will impose heavy burdens on the [CBA]." *See Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997). Because the Government Defendants have not provided any evidence of hardship or pressing need, their request for a stay should be denied on this basis alone.

2. **A stay will further waste judicial resources.**

The Government argues a stay will conserve judicial resources, but if the Government was actually concerned about unnecessarily duplicative litigation, it would have consented to CBA's request last spring to reopen the record in *Religious Sisters of Mercy* to present the Court with evidence that satisfies the first prong of the associational standing test. If the Government was concerned about efficiency, it would have consented to service of process in this case. And if the Government cared about judicial efficiency, it would have agreed to abide by the terms of this Court's

5

January 19, 2021 injunction while the parties briefed cross motions for summary judgment on the CBA's associational standing.

The delay and waste of judicial resources that has ensued is precisely what CBA was concerned with in the *Religious Sisters of Mercy* case: "In practice, [the Government's refusal to consent to the CBA's request to present evidence of associational standing] means that the CBA could re-file the *identical suit* in the District of North Dakota . . . again identifying the members described above with relevant declarations." *See* ECF No. 151, *Religious Sisters of Mercy*, 16-cv-386-PDW-ARS (Jul. 21, 2023). Had the Government consented to CBA's request, the only remaining issue in the case (associational standing) could have been decided without CBA having to draft and file a new complaint, re-serve Defendants, brief a motion for preliminary injunction; and without the Court having to draft orders on a motion for preliminary injunction, a motion to stay, and a motion for summary judgment. The suit would likely have been over by Thanksgiving had the Government's concern been for judicial efficiency.

This is what Judge O'Connor meant when he decried the Government Defendants' litigation tactics vis-a-vis the Mandate as a "legal Penrose staircase" and "Kafkaesque." *Franciscan All.*, 553 F. Supp. 3d at 373 n.10. The Government (1) issued a regulation that burdened the religious beliefs of thousands of Catholic employers; (2) requested stays on stays on stays on the promise of issuing new regulations; (3) those new regulations again burdened religious beliefs and create new burdensome administrative hurdles; and then (4) the Government requests to start over at step (2). That is what happened from 2017-2020, and it is now happening again. The Government has effectively caught religious objectors like the CBA's members in a loop that results in waste of judicial

resources, unnecessary legal expense for religious ministries dedicating to serving the poor and elderly[3], delay, uncertainty, and fear.

### 2.1. The proposed rule simply repeats the years-old Mandate.

The Government Defendants contend that their proposed rule will alter the analysis of CBA's present claims and require duplicate briefing. ECF 26 at 4. But Defendant's proposed rule is still derived from Section 1557 of the Affordable Care Act and still focuses on mandating coverage and performance of "gender transition services." The proposed rule says, "[p]roposed paragraph [92.101](a)(2) clarifies that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes; sex characteristics, including intersex traits; pregnancy or related conditions; sexual orientation; and gender identity." HHS, Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824, 47,858 (Aug. 4, 2022) ("Proposed Rule."). This is the gender-transition-services Mandate that HHS and EEOC have repeatedly issued, that courts have repeatedly identified, and that courts have repeatedly enjoined. *E.g. Religious Sisters of Mercy*, 55 F.4th at 603. Government Defendants say their proposed rule would "simplify" the Mandate, ECF 26 at 7, but that is yet another way to avoid the point. The proposed rule simply repeats the Mandate without repealing or narrowing it. This Court's January 19, 2021, injunction prohibited Government Defendants from issuing *future* "implementing regulations" that would interpret Section 1557 to require the named plaintiffs in *Religious Sisters of Mercy* "to perform or provide insurance coverage for gender-transition procedures." *Religious Sisters of Mercy*, 513 F.

---

[3] For example, Plaintiffs the Sisters of St. Francis of the Immaculate Heart of Mary, whose work is serving the elderly of Dillingen, North Dakota. ECF No. 1 ¶¶ 16-17.

Supp. 3d at 1153. The Defendants have offered no reason why the case needs to be stayed for that injunction to reissue.

### 2.2. The proposed rules administrative review procedures have already been rejected by this Court.

The Government similarly argues that the proposed rule's administrative procedure for considering religious freedom claims on a "case-by-case" basis will alter the Court's analysis of the Mandate's legality. But this argument is only notable for the Government's concession that the proposed rule will *not* contain a religious exemption as required by the orders of this Court and the ruling of the Eighth Circuit. *E.g., Religious Sisters of Mercy*, 513 F. Supp. 3d at 1149.

It is also notable because this "new" procedure simply reinstates the procedure for religious exemptions from the 2016 Rule. As Judge Traynor explained in a similar suit,

> HHS also did not permit any religious exemption under the 2016 Rule and explained RFRA 'would be the proper means to evaluate any religious concerns about the application of Section 1157.' Demands for an exception are evaluated "on a case-by-case basis" turning on the individual facts of each case. This essentially requires providers to prove their religiosity to be exempt by the HHS.

*Christian Emps. All. v. United States Equal Opportunity Comm'n*, 2022 WL 1573689, at *2 (D.N.D. May 16, 2022) (quoting 81 Fed Reg. at 31,180). Judge Traynor rejected this scheme, calling it "[g]overnment harassment of religious organizations" that requires "them to prove they are religious or evaluating whether their religious preferences can withstand a case-by-case analysis." *Id.* at *5; *see also id.* at *8 ("Determining on a case-by-case basis if a religious exemption should apply is certainly not the least restrictive means."). The Court should similarly reject it.

Finally, the Government's argument is notable because the proposed rule promises to create an administrative process obligating each of the CBA's members to make their case for RFRA exemption one-by-one. This is not judicial efficiency.[4]

### 3. The CBA is suffering irreparable injury without an injunction protecting present and future members.

From the outset of this dispute seven years ago, CBA has sought injunctive and declaratory relief that protects all of its members. The CBA seeks this relief because protecting Catholic healthcare providers and employers from the Mandate is at the heart of its mission. The CBA was established "[t]o work and advocate for religious freedom of Catholic and other religious employers" and "[t]o support Catholic employers" who, "as part of their religious witness and exercise," wish to provide employee benefits "in a manner that is consistent with Catholic values." ECF No. 1 at ¶ 46. The Mandate hurts the CBA *itself*, as a ministry seeking to serve organizations. Given these uncontested facts, restricting relief to the CBA's present members would cripple the CBA by preventing it from fulfilling its mission and preventing it from growing. The CBA would be forced to bring *ad nauseum* litigation to protect its members and its religious mission.

As explained in CBA's reply in support of its motion for preliminary injunction, new members regularly join the CBA. Indeed, members have joined since this lawsuit. ECF No. 22 at 12. The Government's refusal to protect all of CBA's members leaves CBA's members exposed to enforcement actions. This has a profound chilling effect upon CBA's recruitment efforts and

---

[4] The Government's argument is intertwined with its assertion that claims of religious freedom cannot be adjudicated by an association. ECF No. 19 at 13-15. But as explained in the CBA's reply in support of its motion for preliminary injunction, this Court and others have repeatedly disagreed. ECF 22 at 3-10.

prevents it from fulfilling its mission and from growing. It will also force the CBA to file motion and motion or initiate lawsuit after lawsuit every time a new member joins the CBA. As Judge Traynor explained in *Christian Employers Alliance*, "a limitation [to present members only] would result in continuous litigation and be a waste of judicial resources as well as the time and resources of the litigants." 2019 WL 2130142, at *5. That is what happened to the CBA in in *Catholic Benefits Association v. Sebelius*, 24 F. Supp. 3d 1094 (W.D. Okla. 2014). There, the Court initially refused to extend its injunction of the Government's contraceptive mandate to future CBA members but, after countless requests to extend the injunction to new CBA members and a second lawsuit, the Court agreed with the CBA and found that it was the most judicially efficient solution to issue a permanent injunction that protects the CBA's future members. *See* ECF No. 184 at p.2, *Catholic Benefits Association v. Hargan*, 14-cv-240 (W.D. Okla. Mar. 7, 2018).

**4.  The CBA has suffered substantial prejudice as a result of the Government's delays.**

The CBA has been litigating this dispute for nearly eight years. Over that time, the Government sought and obtained fourteen stays of the case. This follow-on suit was made necessary by the Government's refusal to consent to the CBA's motion to re-open the record on remand from the Eighth Circuit to present the Court with evidence it satisfied the first prong of the associational standing test. That is the only issue left to be decided in this case. Having now seen the sworn evidence of not one *but twelve* such CBA members, the Government does not dispute that the CBA meets the first prong of the associational standing test. ECF 3 at p. 3 ¶ 3. The CBA's members are entitled to a just, speedy, and inexpensive resolution of this narrow undecided issue. F.R.C.P. 1.

Defendants admit they do not know how long the Court should stay this case by tying it to the promulgation of a final rule. "[I]t is difficult for the agency [HHS] the time period for finalizing the rule." ECF 26 at 3. All the Government can offer the Court is an "aspir[ation]" of its hopes

for finalizing the "new" rule. The Government Defendants are not, in other words, promising to finalize this rule by any particular date and admit that it will not be finalized until *at least* mid-2024 at the soonest. OIRA's review, where the rule has been since the new year, takes at least 90 days and "may be extended indefinitely."[5] Even if issued within 90 days, in April, the rule by its terms will not go into effect for two months, Proposed Rule at 47,837 (discussing § 92.1(b)). That pushes the rule to June, assuming the Government is able to meet its best-case schedule. At that point, the CBA's suit will have been moldering more than eighteen months after the Eighth Circuit issued its opinion; more than a year after the Eighth Circuit's mandate issued; and a full eight years since CBA first challenged the Mandate—all in a suit in which circuit precedent is dispositive except for the narrowest issue of associational standing.

**5. The Government will gain a tactical advantage if a stay is granted.**

The Government has repeatedly lost on the merits of this dispute. Without a meritorious defense of the Mandate, its only tactics have been never-ending procedural arguments, delay, and expense in the hope that bottomless litigation will exhaust CBA and its members.

**6. Judge Traynor denied an identical motion to stay in *Christian Employers Alliance v. EEOC* on November 17, 2023.**

Like its arguments made in opposition to the CBA Plaintiffs' motion for preliminary injunction, the Government Defendants have already litigated and lost a request to stay a nearly identical case on the grounds that they "aspire" to issue a new rule under Section 1557 sometime in the future. *See* ECF No. 72, Def's Mot. Stay, *Christian Employers Alliance v. EEOC*, 21-cv-195 (D.N.D. Oct.

---

[5] OIRA, Regulations and the Rulemaking Process, https://www.reginfo.gov/public/jsp/Utilities/faq.myjsp .

31, 2023). Judge Traynor denied that motion forthwith. ECF No. 79, *Christian Employers Alliance v. EEOC*, 21-cv-195 (D.N.D. Nov. 17, 2023). Judge Traynor first explained that Government Defendants will not "experience hardship or inequity if the stay is not granted." *Id.* at 2. Nor would an indefinite stay of the case promote judicial efficiency: "the Defendants request a stay for an indefinite period of time to await a decision that could be decided sometime this winter. The Court is unconvinced that granting a stay of proceedings for some indefinite period of time pending a decision that *may* be issued *sometime* this winter will promote judicial efficiency." *Id.* at 2-3 (citing *Barnes v. Zurn Pex, Inc.*, 2008 WL 111217, at *3 (D.N.D. Jan. 9, 2008) (finding a stay of litigation for an indefinite period of time pending the outcome of an alternate motion, which may or may not even be filed, will not promote judicial economy). Finally, the Court noted that the Government Defendants admit, as they do here, that the new rule "may not impact this case." *Id.* at 3. Judge Traynor explained that he "w[ould] not grant a stay on grounds that are almost entirely speculative." *Id.* Finally, Judge Traynor rejected the Government's argument that allowing the new rule to go into effect would simplify the case: "The rule could just as easily complicate the issue now before the Court as it could simplify it." *Id.* at 4. The Court should adopt the reasoning of Judge Traynor and deny the Government's motion to stay.

## CONCLUSION

For these reasons, the CBA Plaintiffs respectfully request that the Court deny the Government's motion for stay and proceed to rule on the CBA Plaintiff's fully-briefed Motion for Temporary Restraining Order and Preliminary Injunction.

DATED: February 8, 2024.

Respectfully submitted,


*/s/ Andrew Nussbaum*
L. Martin Nussbaum
Andrew Nussbaum
Nussbaum Gleason PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
(719) 428-4937
martin@nussbaumgleason.com
andrew@nussbaumgleason.com
*Attorneys for Plaintiffs*