**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

|   |   |
|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION, *et al.* )<br>)<br>*Plaintiffs,* )<br>)<br>v. )<br>)<br>XAVIER BECERRA, *et al.* )<br>)<br>*Defendants.* ) | No. 3:23-cv-00203-PDW-ARS |

**REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS
PLAINTIFFS' RFRA CLAIMS OR, IN THE ALTERNATIVE, FOR
<u>SUMMARY JUDGMENT ON THOSE CLAIMS</u>**

I.     **The Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' RFRA Claims**

Plaintiffs lack standing to sue. They have not suffered an injury-in-fact because EEOC and HHS do not require compliance with Title VII and Section 1557, respectively, when such compliance would violate RFRA. Any threat of future enforcement that would violate Plaintiffs' or CBA members' rights under RFRA is too speculative to support standing, particularly in light of the enhanced procedures recently adopted by EEOC and HHS to protect religious rights. *See* Defs.' Mem. 20-30, ECF No. 57. Plaintiffs' contrary arguments are unpersuasive. Plaintiffs also fail to respond to Defendants' showing that their claims are unripe, except in a perfunctory footnote.

A.     **Plaintiffs Lack Standing to Sue**

1.     **Plaintiffs Lack Standing Based on Purported Regulatory Burdens**

Plaintiffs argue that they have standing to challenge HHS's rule implementing Section 1557, 89 Fed. Reg. 37,522 (May 6, 2024) (the 2024 Rule) because they are suffering regulatory burdens and incurring compliance costs. Pls.' Opp'n / Reply Mem. 2-3, ECF No. 62. But for Plaintiffs to have standing, there must be "a causal connection between the alleged injury and the conduct being challenged." *Mausolf v. Babbitt*, 85 F.3d 1295, 1301 (8th Cir. 1996). So alleged general compliance costs are insufficient to confer standing for Plaintiffs' RFRA claim. Rather, Plaintiffs must show that they suffer burdens from requirements that purportedly "substantially burden [their] exercise of religion," in violation of RFRA. 42 U.S.C. § 2000bb-1(a).

Plaintiffs cannot do so, for three reasons. *First*, the Rule provides that where a requirement "would violate applicable Federal protections for religious freedom and conscience, such application shall not be required." 45 C.F.R. § 92.3(c) (89 Fed. Reg. at 37,693). *Second*, the Rule provides that "[a] recipient may rely on applicable Federal protections for religious freedom and conscience" such as RFRA, *id.* § 92.302(a) (89 Fed. Reg. at 37,701), and assures that "OCR will not seek backward-looking relief" based on a party's "good faith reliance that it is exempt . . . due to the application of relevant

religious freedom and conscience protections (*e.g.,* RFRA)." 89 Fed. Reg. at 37,657.  *Third*, a party can notify OCR of its position that it is exempt from complying with requirements of the 2024 Rule under RFRA, and it will automatically receive a "temporary exemption" that applies unless and until OCR concludes that RFRA does not apply.  45 C.F.R. § 92.302(b), (c) (89 Fed. Reg. at 37,702).[1]  Therefore, Plaintiffs are not being required to expend resources on complying with requirements that they believe substantially burden their religious exercise.

Plaintiffs also argue that they are injured by the potential need to establish the application of RFRA on a case-by-case basis if EEOC or HHS initiates enforcement against them.  Pls.' Opp'n / Reply Mem. 4.  This potential injury hinges on hypothetical future enforcement of alleged mandates that neither agency has ever applied over a covered entity's religious objection.  Yet as described below, Plaintiffs fail to meet the standard for pre-enforcement standing.  *See infra*, pp. 2-5.

### 2. Plaintiffs Fail to Establish Injury Based on Future Enforcement

Plaintiffs do not dispute that neither HHS nor EEOC has initiated an enforcement action against any Plaintiff or CBA member.  Therefore, their claimed injury hinges on hypothetical future enforcement.  But Plaintiffs fail to meet the test for pre-enforcement standing, which requires showing that their intended conduct is arguably proscribed by a statute or rule, and there exists a credible threat of prosecution.  *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 603 (8th Cir. 2022).  In arguing that the 2024 Rule arguably proscribes their conduct, Plaintiffs disregard that the 2024 Rule explicitly provides that compliance with the rule "*shall not* be required" when religious protections such as RFRA apply, 45 C.F.R. § 92.3(c) (89 Fed. Reg. at 37,693) (emphasis added), and states that parties are protected from liability based on "good faith reliance" on RFRA, 89 Fed. Reg. at 37,657.  Plaintiffs are incorrect to dismiss this commitment to comply with RFRA in a binding regulation as a mere

---

[1] In the event that OCR concludes that the party is not entitled to an exception under RFRA, the party has the right to appeal to an HHS administrative hearing examiner; if the hearing examiner affirms, the party can obtain judicial review in an Article III court.  *Id.*

"vague[] promise[]" not to violate RFRA. Pls.' Opp'n / Reply Mem. 5. EEOC similarly recognizes that RFRA may provide a valid defense to Title VII liability, and EEOC encourages employers facing a charge of discrimination to raise a RFRA defense "at the earliest possible time" and request that EEOC "prioritize consideration" of the RFRA defense.[2] Ex. 2, at 2.[3]

Plaintiffs also fail to show that a credible threat exists that the 2024 Rule or Title VII will be enforced against them in violation of RFRA. Plaintiffs argue incorrectly that the Court should "assume" or "presume[]" a credible threat of prosecution, even though their burden at summary judgment is to present actual evidence on this point. Pls.' Opp'n / Reply Mem. 6. They note that the Fifth Circuit assumed a credible threat of prosecution existed for a facial First Amendment claim, *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020). But the Eighth Circuit has not done so, and in any event, this is a statutory RFRA claim, not a constitutional challenge.

Plaintiffs note that courts have found standing to sue HHS or EEOC in earlier cases, Pls.' Opp'n / Reply Mem. 7, but they fail to grapple with how the relevant legal landscape has changed since those decisions. For example, Plaintiffs argue that the 2024 Rule's provision that application "shall not be required" when it would violate RFRA, 45 C.F.R. § 92.3(c), is not sufficient on its own to defeat standing, but the 2024 Rule has more. It also explicitly protects parties from retrospective liability based on good faith reliance on RFRA, 89 Fed. Reg. at 37,657, and it entitles parties to an automatic exemption, which can be sought at any time (even prior to the filing of any complaint), that applies unless and until HHS determines that RFRA does not apply (a determination that would be subject to judicial review), 45 C.F.R. § 92.302(c) (89 Fed. Reg. 37,702). These provisions materially affect the standing analysis by adding to the list of contingencies that would have to occur before Plaintiffs faced any threat of being penalized. *See* Defs.' Mem. 21-24.

---

[2] If the EEOC concludes that RFRA does not apply, EEOC lacks authority to penalize a party; any penalty would occur only if a federal court made such a determination upon *de novo* review of the case.
[3] Citations to "Ex. _" are to the exhibits supporting Defendants' Motion. ECF Nos. 55-1 – 55-5.

3

Plaintiffs attack the efficacy of § 92.302 of the 2024 Rule because it does not allow parties to "assert their rights on an associational basis." Pls.' Opp'n / Reply Mem. 11. But the provision's requirement that a party set forth "[t]he factual basis supporting the recipient's exemption," 45 C.F.R. § 92.302(b)(3) (89 Fed. Reg. 37,702), is compelled by RFRA's test that requires determining whether "application of the burden *to the person*" is the least restrictive means of furthering a compelling government interest, 42 U.S.C. § 2000bb-1(b) (emphasis added), a test that requires a fact-specific, individualized analysis, *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006); *Ramirez v. Collier*, 595 U.S. 411, 433 (2022).

Plaintiffs further assert that if unspecified activists request identities of those who requested religious exemptions in a Freedom of Information Act (FOIA) lawsuit, Plaintiffs may be placed in a "Hall of Shame." Pls.' Opp'n / Reply Mem. 13. But their concern that activists will obtain records in a future FOIA lawsuit and use the records in a way that will harm their reputations is speculative.

The analysis is similar as to EEOC, which has adopted enhanced procedures encouraging parties to raise RFRA defenses "at the earliest possible time" and request that EEOC "prioritize consideration of the religious defense before investigating the merits of the charge," Ex. 2, at 2. Plaintiffs argue that their standing to sue EEOC is already established by *Religious Sisters of Mercy*, Pls.' Opp'n / Reply Mem. 16-17, but EEOC's newly enhanced procedures distinguish this case from *Religious Sisters of Mercy* and add to the chain of contingencies that would need to occur before any party could face litigation by EEOC. *See* Defs.' Mem. 26-28.

HHS and EEOC have never enforced Section 1557 or Title VII, respectively, to require a party asserting a religious objection to provide or cover gender-affirming care, which further demonstrates the lack of a credible threat of enforcement here. For Section 1557, Plaintiffs do not and cannot dispute that the only time a covered entity asserted a religious exemption to providing gender-affirming care, OCR immediately paused its investigation and ultimately concluded that the

4

entity was entitled to an exemption. *See* Defs.' Mem. 17; Ex. 4. For EEOC, Plaintiffs point only to two examples that took place years ago and are factually far afield. Pls.' Opp'n / Reply Mem. 10. In *Herx v. Diocese of Fort Wayne-South Bend*, 48 F. Supp. 3d 1168 (N.D. Ind. 2014), when an employee claimed she was terminated by a religious employer because she engaged in in vitro fertilization treatments, EEOC *declined* to bring an enforcement action, and only the employee sued. *Id.* at 1173. In *EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560 (6th Cir. 2018), EEOC brought a lawsuit in 2014 against an employer who terminated an employee because she was transgender. *Id.* at 569. When the employer belatedly asserted a RFRA defense during litigation, the court determined that employing a transgender person did not substantially burden the employer's religious exercise. *Id.* at 585-90. These cases did not involve gender-affirming care, and in the case where EEOC brought an enforcement action, the employer's religious exercise was not substantially burdened.

Plaintiffs argue that *Braidwood Management, Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023), "is on all fours with this case." Pls.' Opp'n / Reply Mem. 14. But *Braidwood* is both non-binding and factually inapposite. *Braidwood* involved two employers who objected to employing gay or transgender employees and sought a religious exemption from Title VII under the First Amendment and RFRA. 70 F.4th at 919-20. The Fifth Circuit concluded that *Harris* itself established a credible threat of enforcement. *See id.* at 927. Defendants disagree with the Fifth Circuit's non-binding conclusion that a single prior enforcement action (over EEOC's fifty years of enforcing Title VII) can establish a credible threat, but *Braidwood* is distinguishable. *Braidwood* and *Harris* both involved objections to employing gay or transgender employees, not gender-affirming care. One case from years ago in a different factual context hardly indicates a credible threat of enforcement.

    **3.**    **CBA Lacks Associational Standing**

CBA lacks associational standing because participation of individual members is required to adjudicate their fact-specific RFRA claims. Defs.' Mem. 32-35. Plaintiffs' argument that Defendants

5

are collaterally estopped from taking this position is incorrect. Pls.' Opp'n / Reply Mem. 19-20. Plaintiffs cite prior cases concluding that CBA had associational standing to challenge the contraception coverage requirement and the EEOC's rule implementing the Pregnant Workers Fairness Act. Those issues are distinct from associational standing to challenge the 2024 Rule and Title VII's application to coverage of gender-affirming care, which turns on whether a member's participation is required to determine whether requiring performance or coverage of gender-affirming care satisfies RFRA's test. Accordingly, "the issue sought to be precluded" is not "the same as the issue involved in the prior action[s]," as required for collateral estoppel. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009).

Defendants acknowledge that courts have held that organizations had associational standing to raise RFRA challenges to earlier actions of HHS and EEOC relating to gender-affirming care. *See* Pls.' Opp'n / Reply Mem. 20-21. But HHS's and EEOC's enhanced procedures to provide for case-by-case resolution of RFRA claims, and protections to those asserting such rights, change the analysis by ensuring that parties will be protected when they raise individual RFRA claims that allow for the type of "to the person" analysis demanded by RFRA and the Supreme Court. 42 U.S.C. § 2000bb-1(b); *O Centro*, 546 U.S. at 430-31.

Plaintiffs' efforts to distinguish *Harris v. McRae*, 448 U.S. 297 (1980), which held that religious liberty claims "ordinarily require[] individual participation," *id.* at 321, are unconvincing. Plaintiffs argue that unlike in *McRae*, CBA members have the same relevant religious beliefs. Pls.' Opp'n / Reply Mem. 21-22. But even if that is true, individualized analysis is required to determine whether applying Section 1557 or Title VII to a specific CBA member's intended conduct would be the "least restrictive means of furthering" "a compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

**B. Plaintiffs' Claims Are Unripe**

Plaintiffs respond to Defendants' showing that Plaintiffs' RFRA claims are unripe, Defs.'

6

Mem. 30-32, only in a footnote, Pls.' Opp'n / Reply Mem. 18 n.12, which this Circuit has found insufficient to avoid waiver, *see Koehler v. Brody*, 483 F.3d 590, 599 (8th Cir. 2007). That footnote argues that because Plaintiffs purportedly have standing, their claims are necessarily ripe. As explained above, Plaintiffs lack standing. *See supra*, Part I.A. Furthermore, Plaintiffs ignore that while there is heavy overlap between constitutional standing and ripeness, ripeness also involves a distinct prudential inquiry concerning (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Plaintiffs will suffer no hardship from the withholding of court consideration because HHS explicitly protects parties from retrospective liability based on good-faith reliance on RFRA and allows parties to obtain an automatic temporary exemption by asserting rights under RFRA (at any time even prior to the filing of any complaint), 89 Fed. Reg. at 37,657, 37,701, and EEOC similarly has adopted enhanced procedures that allow for prioritized consideration of RFRA defenses before considering the merits of a charge. Similarly, Plaintiffs' request for simultaneous resolution of the RFRA claims of thousands of CBA members (including unknown future members) is not fit for judicial resolution, where both agencies offer procedures for individual parties to raise these defenses, to allow the type of "to the person" analysis that RFRA demands. *O Centro*, 546 U.S. at 430-31.

## II.     Defendants Are Entitled to Summary Judgment on Plaintiffs' RFRA Claims

### A.     Plaintiffs Have Not Shown a Substantial Burden to Their Religious Exercise

Plaintiffs fail to show that their "religious exercise has been [substantially] burdened," as required by RFRA. 42 U.S.C. § 2000bb-1(b). It is undisputed that Plaintiffs are not currently providing or covering gender-affirming care in violation of their religious beliefs, and Defendants have not enforced any alleged requirement to do so against on any Plaintiff or CBA member. Defs.' Mem. 35-37; Pls.' Opp'n / Reply Mem. 28 (conceding that "CBA's members will not comply with" the purported "Mandate" and that we are in a "pre-enforcement" posture). Plaintiffs cite this Court's

7

opinion in *Religious Sisters of Mercy v. Azar*, which concluded that the plaintiffs' religious exercise was substantially burdened because, in the Court's view, "refusal to perform or cover gender-transition procedures would result in the Catholic Plaintiffs losing millions of dollars." 513 F. Supp. 3d 1113, 1147 (D.N.D. 2021), *aff'd in part, rev'd in part*, 55 F.4th 583 (8th Cir. 2022). Although Defendants respectfully disagree with this Court's analysis then, it is manifestly inapplicable now. The 2024 Rule explicitly states that compliance "*shall not* be required" when religious protections such as RFRA apply, 45 C.F.R. § 92.3(c) (89 Fed. Reg. at 37,693) (emphasis added), protects parties from retrospective liability for good faith reliance on RFRA, 89 Fed. Reg. at 37,657, and automatically entitles parties to a temporary exemption from the rule upon asserting rights under RFRA, 45 C.F.R. § 92.302(c) (89 Fed. Reg. at 37,702). EEOC lacks authority to investigate an employer until someone files a charge of discrimination, but if that occurs, EEOC's enhanced procedures encourage the employer to assert their rights under RFRA "at the earliest possible time" and request that EEOC "prioritize consideration" of the RFRA defense. Ex. 2, at 2. Given these protections, no "Sword of Damocles" hangs above Plaintiffs' heads. Pls.' Opp'n / Reply Mem. 28. Plaintiffs also fail to respond to Defendants' argument that as to EEOC, Plaintiffs' assertion that application of Title VII could never satisfy RFRA's test cannot be squared with *Bostock*'s statement that RFRA "might supersede Title VII's commands *in appropriate* cases." 590 U.S. at 682 (emphasis added). Defs.' Mem. 37.

   **B.**  **The 2024 Rule Does Not Require CBA Members to Perform Abortions**

Plaintiffs' argument that the 2024 Rule burdens CBA members' religious exercise by requiring them to perform abortion fundamentally misunderstands the 2024 Rule. Pls.' Opp'n / Reply Mem. 29-30. The Rule states that "a covered provider does not engage in discrimination prohibited by section 1557 if it declines to provide abortions based on religious or conscience objections to performing the procedure." 89 Fed. Reg. at 37,576-77. It also states that "[a] covered provider that generally offered abortion care could violate that prohibition if, for example, it refused to provide an

8

abortion to a particular patient because of that patient's race or disability." *Id.* at 37,576. Thus, if a provider without a religious objection provided abortions for White patients but would refuse to provide abortions for Black patients (or vice versa), that could violate Section 1557. But the 2024 Rule does not require providers with religious objections to abortion to perform abortions, including if they perform dilation and curettage procedures for non-abortion purposes, such as miscarriage care.

### III.     Any Relief Should Be Limited

The Court should not award any relief to Plaintiffs. But if it does, relief should be limited in two respects. *First*, relief should not extend to unidentified future members of CBA. Plaintiffs cite non-binding district court decisions in which courts have extended relief to future members of organizations. Pls.' Opp'n / Reply Mem. 26-27. But they fail to respond to Defendants' argument that allowing an organization to assert associational standing on behalf of someone who *is not a member* would violate Article III, Defs.' Mem. 38, in light of the Supreme Court's statement that "an association has standing to bring suit *on behalf of its members*" when the test for associational standing is satisfied. *Hunt v. Washington State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977) (emphasis added). Moreover, notwithstanding Plaintiffs' assertion that the Court can adopt "guardrails" to limit an injunction's application to future members, Pls.' Opp'n / Reply Mem. 27, the Court does not know and cannot know who those members are, what services they will be asked to perform or cover, and any other relevant factual circumstances that would bear on the application of RFRA's test. The uncertainties regarding such future members underscore why Plaintiffs' claims are prudentially unripe. *See supra*, p.7. At a minimum, any injunctive relief that extends to future CBA members should require that the entity "be a member of the CBA at the time of the alleged violation [of Section 1557 or Title VII]." *Catholic Benefits Ass'n v. Burrows*, No. 1:24-cv-00142, 2024 WL 4315021, at *11 (D.N.D. Sept. 23, 2024); *see also id.* at *10 ("[T]he Court agrees that entities should be members of the CBA at the time of the charged conduct and cannot run for protection under CBA membership after the fact.").

*Second*, the Court should reject Plaintiffs' belated request to enjoin EEOC from issuing notice-of-right-to-sue letters. Pls.' Opp'n / Reply Mem. 17-18. Plaintiffs did not request this relief in their Amended Complaint, ECF No. 46, or their Motion for Summary Judgment, ECF No. 50, so it is doubly forfeited. *See Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000); *Pinke v. Kuntz*, No. 1:18-cv-024, 2020 WL 2115808, at *3 (D.N.D. May 4, 2020). Plaintiffs' assertion that two district courts have recently granted similar relief provides no excuse for not requesting such relief earlier.

Moreover, there is no reason to depart from this Court's prior decision not to enjoin EEOC from "issuing a right-to-sue notice." *Religious Sisters of Mercy v. Cochran*, No. 3:16-cv-00386, 2021 WL 1574628, at *2 (D.N.D. Feb. 19, 2021). The private individuals who file charges are not parties to this case; providing such relief would run counter to the Supreme Court's mandate that non-parties should not "be obliged to honor an incidental legal determination [that a] suit produced." *Murthy v. Missouri*, 144 S. Ct. 1972, 1995 (2024). Enjoining the issuance of notices of right to sue would not stop individuals from filing a lawsuit, as they would be able to assert claims for a waiver of the requirement.[4] But without the 90-day statutory limitations period for suit triggered by issuance of notice, *see* 42 U.S.C §§ 2000e-5(f)(1), 2000gg-2; 29 C.F.R. § 1601.28, employers would suffer uncertainty about whether and when employees might sue, and could be subject to litigation for claims that would have otherwise long expired. Employees would be similarly confused about their rights under the statute. And employees, employers, and courts would be further burdened by having to litigate the applicability of equitable exceptions. This Court should avoid triggering such administrative confusion and costs.

## CONCLUSION

The Court should deny Plaintiffs' motion and grant Defendants' motion to dismiss or, in the alternative, cross-motion for summary judgment on Plaintiffs' RFRA claims.

---

[4] The time limits for filing a charge and suit are not jurisdictional and are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Lawrence v. Cooper Communities*, 132 F.3d 447, 451 (8th Cir. 1998).

10

Dated: October 30, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

/s/ Jeremy S.B. Newman
Jeremy S.B. Newman
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov

*Counsel for Defendants*